# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 26, 2024

Lyle W. Cayce
Clerk

---

No. 22-51069

---

National Association of Manufacturers; Natural Gas
Services Group, Incorporated,

*Plaintiffs—Appellants,*

*versus*

United States Securities and Exchange Commission;
Gary Gensler, *in his official capacity as Chair of the SEC*,

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:22-CV-163

---

Before Richman, *Chief Judge*, and Jones and Ho, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

In 2020, after ten years' consideration, the Securities and Exchange
Commission adopted a new rule regulating businesses that provide proxy
voting advice to institutional shareholders of public corporations. Two years
later, the SEC rescinded this rule. The two Appellants challenged the
rescission in district court, arguing, inter alia, that the SEC arbitrarily and
capriciously failed to provide an adequate explanation for its abrupt change
in policy. The district court rejected Appellants' contentions and granted

No. 22-51069

summary judgment in favor of the SEC. Concluding that the explanation provided by the SEC was arbitrary and capricious and therefore unlawful, we REVERSE the district court's judgment, VACATE the 2022 rescission in part, and REMAND to the agency.

## I. Background

### A. The Role of Proxy Firms

Under state law, shareholders of public companies generally have the right to vote on issues of corporate governance during annual and special shareholder meetings. *See, e.g.*, Del. Code tit. 8, §§ 211, 212. Shareholders exercise their rights at these meetings by, for instance, electing directors and voting on proposals from shareholders or management that require shareholder approval. Most shareholders—including institutional investors like hedge funds and mutual funds—do not attend shareholder meetings in person. They instead vote by proxy. *See* Exemption from the Proxy Rules for Proxy Voting Advice, 85 Fed. Reg. 55,082, 55,082 (September 3, 2020) [hereinafter *2020 Rule*].

Institutional investors and investment advisers are highly active in today's financial markets. These entities own, in the case of institutional investors, or are given authority to vote, in the case of investment advisers, a significant number of shares in public companies (known in this context as "registrants"). As the SEC explained in 2020, institutional investors and investment advisers are accountable for "voting in potentially hundreds, if not thousands, of shareholder meetings and on thousands of proposals that are presented at these meetings each year, with the significant portion of those voting decisions concentrated in a period of a few months." *Id.* at 55,083. During this period, they often need assistance managing the voting process, which otherwise might be unmanageable.

No. 22-51069

Proxy voting advice businesses, or proxy firms, provide such assistance. Proxy firms research matters subject to vote and advise clients how to vote on these matters, with the advice they provide often serving as "an important factor in their clients' proxy voting decisions." *Id.* Proxy firms may also provide clients administrative assistance in voting by, for example, enabling clients to vote through an electronic platform or by executing votes directly on their clients' behalf. *Id.*

With institutional investors and investment advisers relying so extensively on them, proxy firms "have become uniquely situated in today's market to influence, and in many cases directly execute, [their clients'] voting decisions." *Id.* As these firms have continued to grow in influence, however, certain concerns have emerged about their practices. Notably, the proxy advice market is effectively a duopoly, because two firms, Institutional Shareholders Services (ISS) and Glass Lewis, control roughly 97% of the market. Investors, registrants, and others have questioned the accuracy of the information and the soundness of the advice that proxy firms provide in this duopolistic market, and they complain about the proxy firms' unwillingness to engage with issuers to correct errors. Attention has also been drawn to potential conflicts of interest arising from proxy firms' provision of consulting services to the same registrants about which they provide voting advice. *See id.* at 55,085.

## B. Regulatory History

In 2010, the SEC undertook to address these concerns and increase transparency and accuracy in proxy voting advice. *See* Chairman Mary L. Schapiro, *Opening Statement at the SEC Open Meeting*, SEC (July 14, 2010), https://www.sec.gov/news/speech/2010/spch071410mls.htm. The SEC's first formal regulatory proposal was published in 2019, the result of nearly ten years of study and collaboration with all interested parties spanning two

presidential administrations. *See* Amendments to Exemptions from the Proxy Rules for Proxy Voting Advice, 85 Fed. Reg. 55,082 (December 4, 2019) [hereinafter *2019 Proposed Rule*].

The SEC's proposed 2019 rule was promulgated under a statutory and regulatory framework that makes it unlawful to "solicit" proxy votes "in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a)(1). The applicable rules and regulations, among other things, prohibit persons who solicit proxies from making misstatements or omissions of material fact in their solicitations, and require such persons to furnish the targets of their solicitations with proxy statements containing certain disclosures. *See* 17 C.F.R. §§ 240.14a-3, .14a-9, .14a-15, .14a-19. On the SEC's interpretation, providing proxy voting advice is a form of solicitation and, therefore, subject to these rules. *See* Concept Release on the U.S. Proxy System, 75 Fed. Reg. 42,982, 43,009–10 (July 22, 2010); Commission Interpretation and Guidance Regarding the Applicability of the Proxy Rules to Proxy Voting Advice, 84 Fed. Reg. 47,416, 47,417–19 (Sept. 10, 2019).[1] But proxy firms are also eligible for exemptions from these rules if they comply with certain conditions. *See* 17 C.F.R. § 240.14a-2(b)(1), (b)(3). The business models of proxy firms rely on the availability of such exemptions. *See* 2020 Rule, 85 Fed. Reg. at 55,085.

The 2019 Proposed Rule would have imposed additional conditions on the availability of exemptions for proxy firms. The most important of these would have required proxy firms to "provide registrants and certain other soliciting persons covered by its proxy voting advice a limited amount

---

[1] As discussed below, the 2020 Rule formally classified proxy voting advice as a form a solicitation. *See* 2020 Rule, 85 Fed. Reg. at 55,091 (amending 17 CFR § 240.14a-1(l)(1)).

of time to review and provide feedback on the advice *before* it is disseminated to the [proxy firm's] clients." 2019 Proposed Rule, 84 Fed Reg. at 66,531 (emphasis added). This aspect of the proposed rule was intended to increase the reliability and accuracy of proxy advice by allowing registrants to identify and address inaccuracies in the advice before it was disseminated. *Id.* But it was criticized during the comment period, with commenters arguing that the pre-dissemination requirement would prevent proxy firms from providing timely advice to their clients and would also undermine the independence of the advice provided. 2020 Rule, 85 Fed Reg. at 55,112.

The SEC took note of these criticisms and, following a sixty-day comment period, adopted the 2020 Rule in place of the 2019 Proposed Rule. The 2020 Rule was more modest than the 2019 Proposed Rule but was still intended to address the accuracy and transparency problems by giving registrants (the subjects of any shareholder vote) the opportunity to point out inaccuracies in voting advice in advance of shareholder meetings. The goal, in other words, was to ensure that proxy firms' clients had a full and accurate understanding of the issues subject to vote and did not exclusively rely on proxy firms' presentation of the issues.

As with the 2019 Proposed Rule, this goal was to be achieved through conditions on the availability of exemptions. The 2020 Rule contained two such conditions, which together will be referred to as the "notice-and-awareness conditions." The first (the notice condition) required proxy firms to make their proxy advice available to registrants "*at or prior to* the time when such advice is disseminated to" proxy firms' clients—a departure from the 2019 Proposed Rule's requirement that the advice be disseminated beforehand. *Id.* at 55,154 (emphasis added). The second (the awareness condition) required proxy firms to provide "clients with a mechanism by which they can reasonably be expected to become aware of any written statements regarding . . . proxy voting advice by registrants who are the

subject of such advice, in a timely manner before the security holder
meeting." *Id.*; *see also* 17 C.F.R. § 240.14a-2(b)(9)(ii) (2020) (rescinded
codification of conditions). In adopting the 2020 Rule, the SEC stated that
the notice-and-awareness conditions "will substantially address, if not
eliminate altogether," the risks to timeliness and independence associated
with the 2019 Proposed Rule. 2020 Rule, 85 Fed. Reg. at 55,138. It
explained:

> [B]ecause [the 2020 Rule] does not require proxy voting advice
> businesses to adopt policies that would provide registrants with
> the opportunity to review and provide feedback on their proxy
> voting advice before such advice is disseminated to clients, the
> rule does not create the risk that such advice would be delayed
> or that the independence thereof would be tainted as a result of
> a registrant's predissemination involvement.

*Id.* at 55,112.

Beyond adopting the notice-and-awareness conditions, the 2020 Rule
(1) codified the SEC's interpretation that proxy voting advice qualifies as
proxy solicitation[2] and (2) confirmed that proxy voting advice is subject to
the anti-fraud regulations governing proxy solicitations by adding an
explanatory note to 17 C.F.R. § 240.14a-9, which provided that the "failure
to disclose material information regarding proxy voting advice, 'such as the
proxy [firm's] methodology, sources of information, or conflicts of interest'"
may constitute a material misstatement. *See* 2020 Rule, 85 Fed. Reg. at
55,091, 55,121. The same day it issued the 2020 Rule, the SEC adopted

---

[2] A district court recently held that that "the SEC acted contrary to law and in
excess of statutory authority when it amended the proxy rules' definition of 'solicit' and
'solicitation' to include proxy voting advice for a fee." *Inst. S'holder Servs. Inc. v. SEC*,
No. 19-CV-3275 (APM), 2024 WL 756783, at *2 (D.D.C. Feb. 23, 2024), *notices of appeal
filed*, Nos. 24-5105, 24-5112 (D.C. Cir.).

supplemental proxy voting guidance for the benefit of investment advisers as they adjusted to the new rule. Supplement to Commission Guidance Regarding Proxy Voting Responsibilities of Investment Advisers, 85 Fed. Reg. 55,155 (Sept. 3, 2020). The 2020 Rule was intended to become effective on December 1, 2021. 2020 Rule, 85 Fed. Reg. at 55,122.

The 2020 Rule never went into effect. The SEC rescinded it in November 2021, a month before proxy firms were required to comply with the notice-and-awareness conditions. The rescission process began shortly after a new SEC chairman, Defendant Gary Gensler, took office. In June 2021, Chairman Gensler directed his staff to reconsider the 2020 Rule and suspended its enforcement in the meantime. Chair Gary Gensler, *Statement on the Application of the Proxy Rules to Proxy Voting Advice*, SEC (June 1, 2021), https://www.sec.gov/news/public-statement/gensler-proxy-2021-0 6-01; SEC Division of Corporation Finance, *Statement on Compliance*, SEC (June 1, 2021), https://www.sec.gov/news/public-statement/corp-fin-pro xy-rules-2021-06-01.

Appellants challenged this suspension in a previous case before the same district court. The district court held that the suspension was unlawful because it was done without notice and comment. *Nat'l Ass'n of Manufacturers v. SEC*, 631 F. Supp. 3d 423 (W.D. Tex. 2022). This holding was of limited consequence, however, since the SEC managed to rescind the 2020 Rule formally before the district court issued its decision in September 2022.

The agency's proposal to rescind the 2020 Rule was published in November 2021, following a closed-door meeting between Chairman Gensler and opponents of the 2020 Rule. Proxy Voting Advice, 86 Fed. Reg. 67,383, 67,385 n.24 (November 26, 2021). The comment period for the proposal was thirty-one days and encompassed portions of the Thanksgiving, Hanukkah,

and Christmas holidays.  *See id.* at 67,383 (identifying December 27, 2021, as the deadline for comments).  Unsurprisingly, far fewer comments were filed during this highly truncated period than had addressed the 2019 Proposed Rule.  After the comment period closed, the SEC adopted the proposed rescission over the dissent of two commissioners.  Proxy Voting Advice, 87 Fed. Reg. 43,168 (July 19, 2022) [hereinafter *2022 Rescission*].

To justify rescission, the agency cited the same timeliness and independence concerns that the 2020 Rule had, according to the 2020 SEC, "substantially address[ed], if not eliminate[d] altogether." *See* 2020 Rule, 85 Fed. Reg. at 55,138.  It explained that the rescission was supported by:

> the continued, strong opposition to the [2020 Rule's notice-and-awareness] conditions from many institutional investors and other [proxy firm] clients, as well as many of the commenters on the 2021 Proposed Amendments, who have continued to raise concerns that the 2020 Final Rules would have adverse effects on the cost, timeliness, and independence of proxy voting advice.

2022 Rescission, 85 Fed. Reg. at 43,170.  In the agency's view, these concerns were "sufficiently significant" to justify rescinding the 2020 Rule's notice-and-awareness conditions.  *Id.* at 43,175.

But the 2022 Rescission did not only rescind the notice-and-awareness conditions.  It also deleted the explanatory note the 2020 Rule had added to the anti-fraud regulation and rescinded the supplemental proxy voting guidance that had been adopted simultaneously with the 2020 Rule. *See* 2022 Recission, 87 Fed. Reg. at 43,178–82.[3]

---

[3] The 2022 Rescission left certain aspects of the 2020 Rule in place.  For instance, it did not disturb the formal classification of proxy voting advice as a form of solicitation.

No. 22-51069

## C. Procedural History

Shortly after the 2022 Rescission was finalized, Appellants National Association of Manufacturers and Natural Gas Services Group, Inc., filed suit against the SEC, bringing claims under the Administrative Procedure Act ("APA"). They argued that the 2022 Rescission was arbitrary and capricious for two reasons: (1) the agency failed to provide an adequate justification for contradicting its prior factual finding that the 2020 Rule did not threaten the timeliness and independence of proxy voting advice, and (2) the agency failed to justify the 2022 Rescission on its own terms. They also contended that the thirty-one-day comment period did not provide interested parties a meaningful opportunity to comment on the proposal.[4] And they made substantive arguments (which they have abandoned on appeal) that challenged the portions of the 2022 Rescission concerning the explanatory note and the supplemental guidance.

The district court rejected each of these arguments and granted summary judgment in favor of the SEC. This appeal followed.

## II. Discussion

This court reviews the district court's grant of summary *de novo*, applying the same standard of review as the district court. *Baylor Cnty. Hosp. Dist. v. Price*, 850 F.3d 257, 261 (5th Cir. 2017). The APA supplies the

---

*Id.* at 43,169. Nor did it disturb certain conflicts of interest disclosure requirements that the 2020 Rule adopted. *Id.*; *see* 17 C.F.R. 204.14a-2(b)(9)(i).

[4] Appellants raise this argument again on appeal. The condensed comment period—which coincided with the holiday season and end of year reporting requirements for registrants—seems to have been designed to elicit as few comments as possible. And it certainly accomplished that purpose. But in light of our conclusion that the 2022 Rescission was arbitrary and capricious, we need not address the agency's truncated procedure.

standard here, directing courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). Applying this standard entails considering whether "the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.*; *accord Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1136 (5th Cir. 2021).

An administrative agency may alter or rescind its policies, including when a new administration enters office. Appellants do not dispute the SEC's authority to do so. Moreover, when an agency makes such a change, it "need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515, 129 S. Ct. 1800, 1811 (2009). But when "its new policy rests upon factual findings that contradict those which underlay its prior policy," a more detailed explanation is required. *Id.* at 515–16, 129 S. Ct. 1800, 1811. An agency's failure to explain its decision to "disregard[] facts . . . that underlay . . . the prior policy" is arbitrary and capricious. *Id.* at 516, 129 S. Ct. 1800, 1811.

By rescinding the 2020 Rule, the SEC acted arbitrarily and capriciously in two ways. First, the agency failed adequately to explain its decision to disregard its prior factual finding that the notice-and-awareness conditions posed little or no risk to the timeliness and independence of proxy voting advice. Second, the agency failed to provide a reasonable explanation why these risks were so significant under the 2020 Rule as to justify its rescission. These shortcomings require vacatur of the 2022 Rescission, but only to the extent it rescinded the notice-and-awareness conditions.

No. 22-51069

## A. Failure to Explain Decision to Disregard Prior Findings

In 2020, the SEC found that the risks to timeliness and independence had been "substantially address[ed], if not eliminate[d] altogether," by the modifications to the 2019 Proposed Rule. 2020 Rule, 85 Fed. Reg. at 55,138. Just two years later, the SEC found that these same risks were, in fact, significant under the 2020 Rule and justified its rescission. This factual finding contradicted the factual finding that underlay the 2020 Rule. The SEC was therefore required, under the Supreme Court's decision in *Fox*, to provide a more detailed explanation of why rescission was justified. But it failed to provide such an explanation.

The SEC argues that the *Fox* detailed-explanation requirement is inapplicable here because the 2022 Rescission "did not reject any prior factual findings." It characterizes the decision to rescind the 2020 Rule as a mere "policy judgment" arising from a reassessment of the magnitude of risks to timeliness and independence. The agency also asserts that, in adopting the 2020 Rule, it did not determine that the notice-and-awareness provisions posed *no* risk to timeliness and independence—and thus did not contradict any such finding in the 2022 Rescission.

The SEC's reassessment of the risk level posed by the 2020 Rule was not a policy judgment but rather a new factual finding that contradicted an earlier one. Case law supports evaluating the quantum of risk assessed by an agency as a factual finding. *See Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 968 (9th Cir. 2015) (Department of Agriculture's determination that an environmental plan regulating an Alaskan forest "pose[d] only minor risks to roadless values" (a benchmark for ecological and other benefits) was a factual finding that directly contradicted the agency's earlier determination that the plan "posed a high risk to 'the extraordinary ecological values'" of the forest). In other contexts, this court

has also treated risk assessments as findings of fact. *See, e.g.*, *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) ("The predicate findings of a substantial risk of serious harm and officials' deliberate indifference to the risk are factual findings."); *United States v. Mitchell*, 709 F.3d 436, 443 (5th Cir. 2013) (treating the question whether the release of a person "would create a substantial risk of bodily injury" as "a factual finding" reviewed for clear error).

As the above cases recognize, risk is measured on a continuum, and the determination whether a risk is high or low, substantial or insubstantial, is a factual finding drawn from the record available to an agency or court. The SEC's argument that it never determined that the 2020 Rule posed *no* risks to timeliness and independence is therefore unavailing. It makes no difference whether the 2020 Rule found *zero* risk to timeliness and independence or minimal risk. The 2020 Rule to some extent supports either conclusion. *See, e.g.*, 2020 Rule, 85 Fed. Reg. at 55,112 ("[W]e believe we have addressed the concerns [regarding timeliness and independence.] . . . [T]he rule does not create the risk that [proxy voting] advice would be delayed or that the independence thereof would be tainted as a result of a registrant's pre-dissemination involvement."), 56,138–39 ("[T]he final amendments will substantially address, if not eliminate altogether, the concerns raised by commenters related to objectivity and timing pressure associated with the proposed engagement process."), 56,139 (stating that the amendments will "mitigate" and "reduce" concerns related to independence). Either way, the SEC contradicted itself two years later by placing these risks so far along the continuum that they were not only present but "sufficiently significant" to justify rescinding the 2020 Rule. 2022 Rescission, 87 Fed. Reg. at 43,175.

Because of this contradiction, the agency was required, under *Fox*, to give "a more detailed explanation" as to why it was abandoning its prior

No. 22-51069

factual finding that the 2020 Rule posed minimal, if any, risks to timeliness and independence. Instead, the agency acknowledged only that while it believed in 2020 that it had mitigated the concerns about timeliness and independence, on reappraisal, the 2022 SEC believed that those risks were too high to justify keeping the 2020 Rule. *Id.* at 43,174–75 ("We weigh these competing concerns differently today . . . ."). This was the agency equivalent of saying, "That was then—this is now." The agency did not engage in any analysis of its prior finding regarding the level of risk or explain *why* it had changed its mind. To be sure, it pointed to various comments complaining that risks to timeliness and independence existed under the 2020 Rule. It did not do so, however, as part of a "detailed explanation," and certainly not one offered to justify the agency's about-face. Indeed, the SEC does not argue on appeal that the 2022 Rescission provided the sort of explanation *Fox* requires; it argues only that *Fox* does not apply—which, as noted above, is wrong. *Fox* applies, and the 2022 Rescission was arbitrary and capricious because it failed to explain its about-face on the interpretation of prior factual findings.

## B. Failure to Justify 2022 Rescission on Its Own Terms

Even apart from its insufficiency under *Fox*, the SEC's justification for the 2022 Rescission was arbitrary and capricious on its own terms. The 2022 Rescission was allegedly based on concerns about the timeliness and independence of proxy voting advice. But, as Appellants argue, neither of these concerns was "reasonable [or] reasonably explained" in the rulemaking process. *Prometheus Radio*, 141 S. Ct. at 1158.

No. 22-51069

*1. Timeliness*

Timeliness was raised as a concern in 2019, when the proposed rule would have required proxy firms to set aside time for registrants to review and provide feedback on advice *before* the advice was distributed to clients. 2019 Proposed Rule, 84 Fed Reg. at 66,531. This requirement plausibly threatened proxy firms' capacity to deliver timely advice to clients by requiring firms to take action and interact with registrants before the firms had delivered their advice to clients. But the 2020 Rule did away with the pre-dissemination requirement, instead requiring proxy firms to share their advice with registrants *at the same* time they shared it with clients. It is thus wholly implausible that the 2020 Rule's contemporaneous-disclosure requirement would pose a threat to timely delivery of proxy voting advice. The advice could be delivered at the usual time; it simply had to be delivered to registrants as well.

Even so, commenters on the 2022 Rescission continued to raise timeliness concerns, which were largely recycled from comments on the 2019 Proposed Rule. *See* Commissioner Hester M. Peirce, *U-Turn: Comments on Proxy Voting Advice*, SEC (July 13, 2022), https://www.sec.gov/news/statement/peirce-statement-proxy-voting-advice-071322 ("The Commission received letters in support of the Redo Proposal as well. These letters did not include new information to justify the Commission's U-Turn. Instead, they reiterated concerns that commenters had raised during the prior rulemaking process."). The SEC apparently recognizes that it cannot, now, rely on timing concerns related to the abandoned pre-dissemination requirement.

It has therefore shifted focus on appeal, and now attempts to locate remaining timeliness concerns in the aggregate compliance burdens on proxy firms arising from the 2020 Rule's notice-and-awareness conditions. But the

No. 22-51069

2022 Rescission hardly discusses this idea. Only one sentence mentions "additional compliance burdens," and it is a quotation of a comment in the agency's summary of the comments received on the proposed rescission. 2022 Rescission, 87 Fed. Reg. at 43,171. A review of the 2022 Rescission otherwise indicates that the agency relied, unquestioningly, on commenters' purported concerns about timeliness, without actually linking the requirements of the 2020 Rule to those concerns. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2866 (1983) ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" (citation omitted)); *see also El Paso Elec. Co. v. FERC*, 76 F.4th 352, 364 (5th Cir. 2023) ("[A]ll agency action, even 'predictive judgment[s] based on the evidence' available, must be 'reasonable and reasonably explained.'" (quoting *Prometheus Radio*, 141 S. Ct. at 1160)). And it did so without even addressing comments that disputed the purported concerns about timeliness, including comments submitted by the two Appellant organizations. *See Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 346 (D.C. Cir. 2019) ("These public comments called into question the justifications offered by the Postal Service, and therefore the Commission should have evaluated [their merits]."); *Texas v. Biden*, 10 F4th 538, 555 (5th Cir 2021) ("Nodding to concerns raised by commentors only to dismiss them in a conclusory manner is not a hallmark of reasoned decision-making." (quoting *Gresham v. Azar*, 950 F.3d 93, 103 (D.C. Cir. 2020), *vacated and remanded*, 142 S. Ct. 1665 (2022))).

In sum, not only is timeliness in delivering proxy recommendations a facially irrational concern of proxy firms under the 2020 Rule, but the SEC's failure either to explain the reasons why it was motivated by that concern or to address commenters' disagreements are clear indicators of arbitrary and capricious rulemaking.

No. 22-51069

*2. Independence*

The independence concern has more potential than the timeliness concern to be reasonably explained, but the SEC failed to provide a reasonable explanation in the 2022 Rescission itself. To show that it adequately identified independence as a justification for rescinding the 2020 Rule, the SEC relies primarily on one passage in the 2022 Rescission. It is a quotation (in a footnote) of a comment contending that the 2020 Rule "could jeopardize the independence of proxy advice as proxy advisory firms may feel pressure to tilt voting recommendations in favor of management more often, to avoid critical comments from companies that could draw out the voting process and expose the firms to costly threats of litigation." 2022 Rescission, 87 Fed. Reg. at 43,175.

In the 2022 Rescission, the SEC nowhere explains how a drawn-out voting process would affect the independence of proxy voting advice. But the proxy firms have no interest in whether the voting process becomes drawn out as to registrants. To the contrary, a major purpose of the 2020 Rule was to enlighten shareholders when registrants choose to respond to proxy firm advice. The impact on the shareholder voting process does not affect proxy firms.

Nor does the SEC explain how the notice-and-comment conditions would expose firms to costly threats of litigation any more than would be the case in their absence. In fact, the SEC adopts a commenter's statement that ISS and Glass Lewis voluntarily provide some registrants with their proxy advice at the time of its dissemination to clients; if so, there is no change in the potential threats of litigation. On appeal, however, the SEC modifies its position to aver that the 2020 Rule would have exposed proxy firms "to potential 'threats of litigation' over the adequacy of the mechanism used to make their clients aware of" registrants' responses. But this concern is not

mentioned in the 2022 Rescission. And "[i]n reviewing an agency's action, we may consider only the reasoning 'articulated by the agency itself'; we cannot consider *post hoc* rationalizations." *Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F.4th 846, 856 (5th Cir. 2022) (quoting *State Farm*, 463 U.S. at 50, 103 S. Ct. at 2870).

The two other independence-related justifications that the SEC offers on appeal are also *post hoc* rationalizations. First, the agency argues that the 2020 Rule threatened "the independent role" of proxy firms because the awareness condition would have required firms to become "a conduit for disseminating registrants' (and only registrants') views to their clients." This notion is not discussed in the 2022 Rescission, which in considering the threat to independence focused on the threat to the "independence of proxy voting *advice*," not on some generalized threat to the independent role of proxy firms. *See* 2022 Rescission, 87 Fed. Reg. at 43,169. And to the extent it implies a First Amendment concern about the awareness condition of the 2020 Rule, any such concern was rejected at that time. 2020 Rule, 85 Fed. Reg. at 55,117–118.

Second, the SEC contends that "adding new compliance burdens triggered only when a registrant responds to a [proxy firm's] advice creates an incentive for" proxy firms to favor management in voting recommendations. This theory—that the increased cost of opposing management would have discouraged proxy firms from doing so—is not advanced in the 2022 Rescission. The only support for it comes from a summary of a comment in the *2020* Rule, the reasoning of which the agency did not adopt. *See* 2020 Rule, 85 Fed. Reg. at 55,139. And even if the SEC believes this to be a "common-sense proposition," the agency was still required to explain the proposition when justifying its decision to rescind the notice-and-awareness conditions. *See State Farm*, 463 U.S. at 43, 103 S. Ct. at 2866 (requiring agencies to "articulate" a "rational connection between

No. 22-51069

the facts found and the choice made" (citation omitted)); *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 389 (D.C. Cir. 2018) (stating that agencies have an "'affirmative burden' to explain all of the 'key assumption[s]' embedded in its new regulations" (citation omitted)).

Because the SEC did not offer reasonable or reasonably explained justifications for the decision to rescind the 2020 Rule, its action was arbitrary and capricious for this additional reason.

## C. Vacatur and Severance

Appellants seek to vacate the entire 2022 Rescission, including the portions that deleted the explanatory note to the anti-fraud provision and rescinded the supplemental proxy voting guidance. The SEC advocates either remand without vacatur or, if this court were to vacate and remand, severance of the portions of the 2022 Rescission that do not concern the notice-and-awareness conditions.

As an initial matter, vacatur with remand is the appropriate remedy for the SEC's APA violation. "Under section 706 of the APA, when a court holds that an agency rule violates the APA, it '"shall"—not may—"hold unlawful and set aside" [the] agency action.'" *Nat'l Ass'n of Private Fund Managers v. SEC*, No. 23-60471, 2024 WL 2836655, at \*12 (5th Cir. June 5, 2024) (citation omitted). Accordingly, "vacatur of an agency action is the default rule in this Circuit." *Cargill v Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc), *aff'd*, No. 22-976, 2024 WL 2981505 (U.S. June 14, 2024). The SEC has not demonstrated that this case warrants departing from this general rule.

That leaves the question whether the entire 2022 Rescission should be vacated, or just the portion concerning the notice-and-awareness conditions. Appellants argue that the entire 2022 Rescission should be vacated because the portions concerning the explanatory comment and the

supplemental guidance (neither of which Appellants challenge substantively on appeal) are inseparable from the portion concerning the notice-and-awareness conditions. We disagree.

The SEC included a severability clause in the 2022 Rescission:

> If any of the provisions of these amendments, or the application thereof . . . is held to be invalid, such invalidity shall not affect other provisions or the application of such provisions . . . that can be given effect without the invalid provision or application. In particular, the amendments to Rule 14a–2(b)(9) [pertaining to the notice-and-awareness conditions] operate independently from the amendments to Rule 14a–9 [pertaining to the explanatory comment].

2022 Rescission, 87 Fed. Reg. at 43,182–83. The Supreme Court has held, in the statutory context, that courts "should adhere to the text of [a] severability clause" in the absence of "extraordinary circumstances." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2349 (2020); *see also Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686, 107 S. Ct. 1476, 1481 (1987) ("This Court has held that the inclusion of such a clause creates a presumption that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision."). Appellants have not identified any extraordinary circumstances here.

Nor is severability warranted under the two factors that the D.C. Circuit considers when resolving severability issues in the agency rulemaking context. One factor is whether there is "substantial doubt" that "the agency would have adopted the same disposition regarding the unchallenged portion [of the rule] if the challenged portion were subtracted." *Nasdaq Stock Mkt. LLC v. Sec. & Exch. Comm'n*, 38 F.4th 1126, 1144 (D.C. Cir. 2022) (citation omitted). The other is "whether the remaining parts can 'function sensibly

No. 22-51069

without the stricken provision.'" *Id.* (citation omitted). The severability clause in the 2022 Rescission dispels any doubt about what the SEC would have done if the rescission of the notice-and-awareness conditions were subtracted. And Appellants have not shown that the portions concerning the explanatory note and the supplemental guidance cannot function sensibly in the absence of that rescission. Accordingly, these two portions are severable.

## III. Conclusion

We REVERSE the district court's judgment, VACATE the 2022 Rescission to the extent it rescinded the 2020 Rule's notice-and-awareness conditions, and REMAND to the SEC.